**HARBISON–WALKER REFRACTORIES COMPANY et al., Appellants,**

v.

**UNITED BRICK AND CLAY WORKERS OF AMERICA, AFL–CIO LOCAL NO. 702, Appellee.**

Court of Appeals of Kentucky.

Nov. 4, 1960.

Thos. D. Theobald, Jr., Grayson, for appellants.

O. F. Duval, Olive Hill, for appellee.

CLAY, Commissioner.

This is an appeal from a summary judgment confirming an arbitration award between the appellant employer (hereinafter referred to as Company) and appellee defendant labor union, and further directing appellant employees to acquire and maintain membership in the union.

The suit was initiated as a declaratory judgment action by the Company and certain of its employees who were not members of the defendant union. The questions raised were whether or not (1) the Company's employees in Morgan County, Kentucky, were covered by the labor union contract, (2) such employees were required to join the union, and (3) the dispute was a proper subject of arbitration. Shortly after this suit was filed the defendant union brought an independent action to enforce the ex parte award of the arbitrator (which had decided these questions favorably to the union) and the cases were consolidated.

The union contract was between the Company, the parent union and Local Union No. 702 "whose members are employed at the Company's Olive Hill, Kentucky Works and Brinegar and/or Sparkman Mines and/or Olive Hill, Kentucky clay pit and/or Brinegar and/or Sparkman stripping operations."

About six months after the execution of this contract the Company began new operations in Morgan County, which were not directly related to the operations referred to in the contract. The employees there were not "members" of the union designated as parties to the agreement. The union demanded jurisdiction of the Morgan County operations and two grievances alleged the Company had violated the contract by failing to post jobs available in Morgan County and by refusing to recognize the seniority right of a union member to a job in Morgan County. (Another grievance is unimportant here.) The Company took the position that the Morgan County operation could not be the basis for "grievance" procedure under the contract and it refused to join in the appointment of an arbitrator (provided for therein) to settle the dispute.

The union thereupon requested appointment of an arbitrator by the American Arbitration Association (procedure authorized by the contract), who conducted a hearing and entered an award. In substance the arbitrator found that (1) this was an arbitrable dispute involving the "interpretation or application of the provisions of this contract * * *" (the language used in the contract), (2) the Morgan County jobs were covered by it, and (3) the complaining union members had justifiable claims.

The basic contentions of the Company and the non-union Morgan County employees are that the dispute between the parties is not a proper subject of arbitration under the contract, the arbitrator could not decide this question, and the court erroneously confirmed the award.

1. Jurisdiction of State Court

In its original brief the Company contended the circuit court did not have jurisdiction of the subject matter because the enforcement of arbitration agreements is exclusively a federal matter under section 301(a) of the Labor Management Act of 1947, which relates to "Suits for violation of contracts." 29 U.S.C.A. § 185. This contention was made despite the fact that the Company initiated these proceedings to contest the arbitration award in the state court. We gather from its later brief that it has abandoned this untenable position.

Both parties apparently assume these proceedings are within the scope of section 301(a) and no question is presented on that score. See Mengel Company v. Nashville Paper Prod. and Spec. Workers Union, 6 Cir., 221 F.2d 644. Accepting this view, it appears that both federal and state courts have concurrent jurisdiction to enforce collective bargaining agreements, particularly agreements to arbitrate. See McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.App.2d 45, 315 P. 2d 322, and Coleman Company, Inc. v. International Union, Etc., 181 Kan. 968, 317 P.2d 831. The circuit court had jurisdiction.

2. Validity of Ex Parte Arbitration Procedure

The Company next takes the position that the contract does not authorize the ex parte appointment of an arbitrator whose award shall be binding on the parties. The contract provides that in the event the parties cannot agree upon an arbitrator "either party shall have the right to request the American Arbitration Association to appoint an arbitrator." We are unable to comprehend what could possibly be the purpose of this provision unless the arbitrator so appointed would have the right to arbitrate the dispute and finally to settle it. Otherwise the language would be meaningless. The sentence following this provision in the contract, at least by implication, shows plainly that such

arbitrator does have the full power to act on the dispute (provided it is an arbitrable matter.)

The many cases cited by the Company involve contracts containing no such wording. A comparable arbitration provision was considered and ex parte proceedings upheld in Battle v. General Cellulose Company, 23 N.J. 538, 129 A.2d 865. It seems clear on this record that the union scrupulously followed the only proper procedure to secure an arbitrator when the Company refused to participate. There was no procedural impropriety.

3. Authority of Arbitrator to Determine Conclusively Whether or Not the Dispute was an Arbitrable One

We are now approaching the heart of this controversy. The contract provides that a dispute may be finally settled by an arbitrator "if the issue involves the interpretation or application of this Contract." It also provides "The Arbitrator shall not, however, have the power to alter, disregard, or amend any of the provisions of this Contract." It does not specifically provide (as some contracts do) that the arbitrator shall have the power to determine whether or not the matter presented is a proper subject of arbitration.

As an original proposition, some members of this Court are inclined to the view that if an arbitrator has authority to determine the "application" of the contract, this may well include the right to determine whether or not a particular grievance is one subject to arbitration. However, since this proceeding involves a controversy arising under the Federal Labor Management Act of 1947, and since we are treating it as a suit under section 301(a) of that Act, we have been enjoined by the Supreme Court of the United States to apply the federal substantive law. In Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, that Court declared that federal interpretation of the federal law will govern the remedial

rights of the parties. This was recognized by the California Supreme Court in McCarroll v. Los Angeles County District Council of Carpenters, 49 Cal.App.2d 45, 315 P.2d 322, wherein it was acknowledged that state courts must apply the federal law pertaining to collective bargaining agreements.

On the question of whether or not an arbitrator has the authority to decide if the matter is arbitrable, the federal courts have created a solid body of substantive law. They have consistently held that in actions brought to compel arbitration (and these proceedings may be said to involve the same considerations) the issue of arbitrability is one of law to be decided by the courts in the absence of a specific agreement that the arbitrator shall decide it. Cases so deciding, in which was considered the identical language we have here ("interpretation or application" of the contract), are: Local No. 149 of American Federation of Technical Engineers v. General Electric Co., 1 Cir., 250 F.2d 922; Boston Mutual Life Ins. Co. v. Insurance Agents' Int. Union, 1 Cir., 258 F.2d 516; New Bedford Defense Products Division of Firestone Tire & Rubber Co. v. Local No. 1113, Etc., 1 Cir., 258 F.2d 522; Brass & Copper Workers Federal Labor Union No. 19322 A.F.L.-C.I.O. v. American Brass Company, 7 Cir., 272 F.2d 849.

In Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, 5 Cir., 257 F.2d 467, 470, 471, where the words "meaning, application or interpretation" of the contract were construed, the court summed up the governing principle (with numerous citations in support thereof) in the following language:

"Initially, the appellant earnestly contends that the question of arbitrability should be determined by the arbitration board in this case, saying that the lower court should not have decided the issue of arbitrability in view of the contract provision that 'any grievance' could be arbitrated. While there is much to say in favor of appellant's argument, the courts have, with practical uniformity, held the question of arbitrability to be an issue for the courts—that is, the courts decide if the particular grievance is arbitrable under the terms of the collective bargaining contract. This is true even where the contract specifies that *any* controversy relating to the meaning or interpretation or application of the contract is arbitrable: Perhaps, if the contract expresses that the arbitrators will decide arbitrability, the courts would refrain from a decision."

See also United Steelworkers of America v. Warrier & Gulf Navigation Co., 5 Cir., 269 F.2d 633, 636 ("meaning and application"), and Cuneo Eastern Press, Inc., of Pennsylvania v. Book Binders and BWU, 176 F.Supp. 956, 958 ("interpretation or enforcement").

The strongest language on this question (although similar wording was not involved) appears in American Stores Company v. Johnston, D.C., 171 F.Supp. 275, 277, as follows:

"The cases have almost uniformly held that, absent clear evidence of a contrary intent, the question of arbitrability *vel non* is to be judicially determined. Only where the parties have unequivocally expressed a desire that the arbitrators shall determine their own jurisdiction will that issue be withdrawn from the Courts."

We believe we are bound by the construction of these contracts which has been adopted in the cited cases. The union fails to cite a single authority to the contrary. Its only case on this point is Local 201, International Union of Elec., Radio and Machine Workers, A.F.L.-C.I.O. v. General Electric Company, 1 Cir., 262 F.2d 265, wherein the court used language to the effect that an agreement *may* be interpreted to empower the arbitrator finally to determine the issue of arbitrability, but strangely this case involved an agreement which

specifically provided that the arbitrator could *not* decide this question.

Under the contract before us there does not appear any specific language to indicate the arbitrator was empowered to determine his own jurisdiction of the controversy. Much less is there clear evidence of such an intent. Basically this is a question of law and when there is a dispute about it, as here, the matter must be determined by a court.

### 4. Is the Dispute an Arbitrable One?

As we have indicated, the question of arbitrability under this contract is an issue of law. The trial court did not decide it, but simply confirmed the finding of the arbitrator (which included the determination). We believe the issue must be independently tried by the court. We are doubtful that in the state of this record it may be adjudicated on motion for summary judgment. One of the basic problems in the controversy is whether or not drillers and drill helpers, in places other than those referred to in the contract, are subject to its provisions. Another is whether or not the rights of the individual appellants, who are not parties to the contract, can be conclusively decided by an arbitrator. Apparently there are disputed questions of fact upon which proof should be introduced before a correct conclusion with respect to arbitrability may be reached. This determination involves both findings of fact and conclusions of law. It is possible the parties may stipulate the material facts, but in any event, the court must make an independent determination of whether or not the dispute is arbitrable.

### 5. Conclusion

From the foregoing it is our conclusion that the summary judgment confirming the arbitrator's award was erroneous; that the issue of arbitrability must be reconsidered independently by the court (upon proof if necessary); and that if it is determined the dispute is arbitrable under the provisions of the contract, the award may be confirmed. If a contrary conclusion is reached,

the award must be adjudged of no legal effect. In the latter event further proceedings and/or additional determinations may be required to adjudicate finally the respective rights of the parties.

The judgment is reversed for proceedings consistent with this opinion.